May it please the Court, my name is Frank Leone and I'm representing Ms. Cruz-Salas in this appeal. The issue in this case, I think, is fairly an interesting one after Orso, which suggested that where there has been at least an involuntary statement in violation of Miranda, that subsequent statements may be tainted by the involuntariness of that first statement. And in this instance, there were three interrogations conducted. The first one, the trial court found the defendant had waived her Miranda rights, made a statement which was exculpatory, and then asserted her rights remained silent. Approximately an hour later, another agent, and the agent who had interrogated her at first, attempted again to interrogate her. And the testimony with regard to what happened at that second interrogation conflicts quite a bit between the two agents. Mr. Alvarado testified that Ms. Cruz-Salas repeatedly denied any knowledge of marijuana in this vehicle. But he also goes on to describe that after interrogation by him and Mr. Gardner, she, quote, broke down, began crying, and made a statement. Subsequent to that, approximately an hour later, Mr. Alvarado says that as they were leaving the jail, she was in a holding cell and beckoned them and attempted to negotiate some kind of a disposition or some kind of a sentencing consideration in her case. The district court denied or sustained the motion to suppress the second statement, the court said, because it was a violation of Miranda. Ms. Cruz-Salas had not sought to talk with the agents. She had not sought to reinitiate any contact with them. Unfortunately, the district court didn't address whether or not he concluded that her statements were involuntary. And so he excluded those statements. But then he decided that the statement made an hour after that, the third statement was voluntary because she initiated the contact. And our contention is that the second statement was involuntary. The evidence clearly supports that, notwithstanding Mr. Gardner's testimony that she made a statement rather quickly and without any duress. Certainly from the testimony of Mr. Alvarado, it suggests that she asserted her rights. She was reluctant to talk to them. She had not reinitiated contact. And as Mr. Alvarado says, she repeatedly denied any knowledge of the marijuana in this vehicle. And he continued to harangue her, suggested to her that she would lose this vehicle as she was driving, that it would go better for her if she, quote, told the truth as he saw it, Mr. Alvarado saw it. Is that improper to say that to somebody? I don't believe it is improper. But I think having asserted her rights, it certainly makes it much more suspect when an agent continues to interrogate after a person has said, I don't want to talk about this. And then the agent says, then she broke down and cried and told me the truth. So I think you have to look at the whole context of it, not just the statement. You'll help yourself if you tell us the truth. In this instance, between the time of the first statement and the second, she was kept in a cell, 12 by 12, I believe, were the dimensions of the cell. And it certainly appears from the testimony that even when Agent Gardner arrived and they interrogated her the second time that she was consistent with her earlier statement that she had no knowledge of the marijuana in the vehicle and that she didn't want to talk to them. That certainly sounds, even though there's some testimony by Agent Gardner that he advised her of her rights, that certainly sounds like they were disregarding her rights anyways because they didn't believe that she was telling them the truth when she denied knowledge of the marijuana. And that statement was suppressed. That statement was suppressed. But the reason I suggest that it was that is part and parcel of the entire interrogation is because Orso suggests that subsequent statements in violation of Miranda may be suppressed as involuntary because they may be tainted by the involuntariness of that statement. The word used over and over again in Orso is not involuntary. It's rather coerced. It could be that involuntary and coerced are synonyms. Although if there's a difference, coerced is a little stronger. My question is, and I read and then after you began to talk I reread the portion of the district judge's open court statement that's in the transcript as he rules that the second encounter has to be suppressed because it's in violation of Miranda. But he does not say, does not really rule directly on the Orso question. Now Orso had come down the year before, so it was there. Did you make any argument to the judge? Now listen, just the fact that it's suppressed under Miranda is not enough. We need to talk about Orso. Did you say anything to the judge at all on that point? I didn't cite Orso. I suggested to the judge because the second statement in our opinion was coerced, that all of the statements had to go out except her initial statement, exculpatory statement. And I suggested to the judge that the second statement or the third statement, excuse me, was tainted by the interrogation, the second interrogation. Had Orso been brought to the attention of the judge? I don't believe I brought it to the attention of the judge. I was the trial counsel and I don't remember citing it to him. I know that we requested, I think I had recently read Orso and I had requested a copy of the transcript but it wasn't prepared before. Okay. My sense of the law prior to Orso to the extent that it was not clear was that the law was slightly more favorable to defendants and that Orso, as it were, were less favorable. So if the judge were operating in a pre-Orso state of mind, I think he might have been more favorable to your client rather than less because coercion is obviously more than, very self-consciously in the Orso opinion, more than simply a failure under Miranda. I agree. The other problem I think or the other interesting issue about this is this Dickerson case which says that Miranda is not just a prophylactic rule. It's a constitutional dimension. And it suggests to me that there may be, in fact, a problem when there's a Miranda violation that is blatantly disregarded by agents that continue to interrogate. The question then becomes, well, is it coercive to continue to interrogate thinking that Orso is going to protect you? I suggest that it is coercive. In this instance, in Orso there was no Miranda violation. In this instance, there was a Miranda assertion or a Miranda warning. And according to Mr. Alvarado, she says, I don't want to talk. She continues to deny any knowledge. But they continue to interrogate her anyways. And I suggest that that, because of the constitutional dimension of Miranda, that that is coercive to continue to disregard somebody's clear assertion of a right to remain silent. So I think to that extent it's probably even worse than Orso because, as I say, in Orso there was no Miranda warning. The agents just interrogated her. And then subsequently after they, quote, let the cat out of the bag, they Mirandized her and get a statement from her. And we suggest that the third statement in this instance is exactly the same situation. They disregarded her Miranda warnings. Can I ask you this because your time is running? Tell me why, sort of with factual things, why was the second encounter where she, quote, breaks down, why was that coercive? First of all, because she had asserted her right to remain silent. Yeah, I have that part. And. Why else? It was obviously not going to be regarded. The second thing is that these agents continue to apply, we suggest, psychological pressure or coercion, trying to prey on her feelings of guilt, trying to prey on her fears and about losing this vehicle, about there was also another person involved there. There was some talk about the money there that had been taken from her. They wanted her to give it apparently to her to her friends so that her friend wouldn't be left abandoned. So all of these things were were used, I think, by the by the agency in conducting that interrogation. And the fact that they continue to interrogate her after her assertion of right and. And certainly suggested that it was a coerced statement or an involuntary statement because she broke down and cried. Finally, as Mr. Alvarado states. Morning. My name is Nathan Leonardo and I'm here for the District of Arizona. The district court in this case did not clearly err when it found made the factual finding that the defendant in this third statement initiated the conversation. It did not err when it found that she volunteered information in the second and the third statement. Coercive conduct is and asked a question about whether or not coercive conduct and involuntariness are synonymous. Coercive conduct is actually a prerequisite for a finding that a statement is involuntary. Under Colorado versus Conley, the defendant's mental state and defense counsel brings up the fact that she broke down crying. The defendant's mental state under Orzo is not enough to find a statement involuntary. What there has to be is coercive activity by the agents. And in this case, there weren't there wasn't any coercive action in the third statement or in any other any of the other two statements. The third statement, the facts, as the district court found them, were that the agents were walking out of the detention facility. The defendant knocked on the cell window and asked them to come over and there's no question about the third one. The third one is not coerced. The issue is whether the second one is coerced. And the issue to me, I'm afraid, is I'm just we're just presented with the laws that comes to us. Coercion turns out to be a term of art and it turns out to be sort of along the spectrum. And the question really is how tight were the thumbscrews? Meaning it was clearly coercive in a way sense. They were trying to get her to talk and they were exerting lots of pressure. And the question is whether it's such strong pressure as it becomes coercive in the vocabulary of Orzo. Now, they made some suggestions to her that might have been interpreted by her as promises. And I don't. Lenient treatment and that kind of stuff. Well, actually, there was two statements made to the defendant throughout all three statements. And I think they were both during the second statement. One that Agent Alvarado told her, I can't make you any promises, but it would be better if you told the truth. That in itself has been held by this court not to be. Was there any representation as to what might happen to the truck depending on whether she said anything? No. In fact, the statement was that you're going to lose your truck. That's how it came out in the testimony that Agent Alvarado told her she would lose her truck, which was actually her daughter's truck. And that was a statement of fact. That was a statement telling her that it would be seized because it was used in a criminal enterprise. And so it was going to be seized. She was going to find that out sooner or later and they weren't going to hide that from her. They simply told her that as a statement of fact, but there was no quid pro quo. What put it into her head that she might get better treatment if she were to cooperate? I don't know that that was in her head. Did she testify? No. I don't believe so. And so we really don't know whether or not she, what was in her head. But in any event, I don't think that, as Orzo points out, it's not her mental state that matters in the voluntariness inquiry. It's whether or not there was coercive conduct. And the government submits that that means threats or promises of some sort. And there simply weren't any in this case. There was a statement of fact. And without a quid pro quo, it wasn't we're going to take your truck unless you're going to cooperate with us or anything of that nature. It was simply you're going to lose your truck. And the statement that. And vague things like it will go better for you if you tell the truth. Don't rise to the level of forbidden threats or. Well, under this. I don't believe so. Under this court's ruling in a Maya Ruiz versus Stewart. It's not improper for agents to tell someone to tell the truth. I understand that. But it's one thing to say tell the truth. It will go better for you if you tell the truth. I think it's important to remember that that statement was prefaced by the fact that the agent told her he can't make her any promises. In other words, he had no authority to do it. And I'm making no promises. Look at my left hand. You know, it will go better for you if you tell the truth. Now, which hand do you believe? Well, yeah, I think that he told her he couldn't make her. He didn't have the authority to make any promises. And just generally. And it was kind of a vague statement. And that's what came out. I think you're right. That's what our what our law is on this point. And so I don't believe there was. In fact, the government even takes issue with the district court's ruling that this was a Miranda violation in the first place. And I say that just because the district court can be upheld for any reason. And we noted that in footnote for the government's brief that the district court was under made an erroneous statement of its erroneous belief that the law disallowed agents from ever talking to a defendant again after they invoked the right to remain silent. In this case, a lot of time passed. A different agent was present. Different agent read her a fresh set of Miranda warnings or rights. And I think that the. None of these encounters were tape recorded. That's correct. No videotape or standard practice not to videotape me on these interrogations. Unfortunately, yes. That is better, not just for the defendants. Often I think it would be much better for the prosecution if they would do that because we stay away from. He said, she said, my experience in reading lots and lots of transcripts and sometimes seeing these tapes is the police officers know exactly what they're doing. And if they had a tape of what they're doing, there's a lot. We would be spared a lot of trouble. Let me ask you this. In this case, do I understand only the officers testified that their testimony was uncontradicted either by testimony or by declaration? I believe so, Your Honor. As for the second issue, I don't know if the court wants me to address that. But the departure issue for agent misconduct, the court district court never indicated that it lacked discretion to depart. It simply did not grant the motion or request for departure on that ground. And so it's really unreviewable on appeal unless the court has any other questions about that. Thank you, Your Honor. Mr. Leo, you have about a minute. I will be very brief. In fact, there were statements made to Ms. Cruz that things would go better for her at sentencing, and it's on page 74 of the transcript of the hearing. And it was by Mr. Alvarado where he said that he told her that it would go better for her, referring to the fact that it would go better for her at sentencing. It's on lines 16 through 20 of page 74. Thank you. Is that a true statement? She accepts responsibility and thinks it would go better at sentencing? Well, it is a true statement. As it turned out, she tried to help the agents, and they rejected her offers for help. And she did get an acceptance of responsibility? She did get an acceptance of responsibility from the court. It went better for her at sentencing? Well, it was opposed by the prosecution, I can tell you that, because she had had a trial. Thanks. Thank you, both gentlemen. The case just argued is submitted.
judges: Silverman, W Fletcher, Rawlinson